v. Abreu, number 20-2786, Ms. Arkell and Mr. Coyne. And feel free to take your masks off. Whatever makes you comfortable. Good morning. May it please the court, Louise Arkell, Assistant Federal Public Defender for Appellant Junior Abreu. Is it Abreu or Abreu? I think it can be either. The Philadelphia Philly was Abreu. May I please reserve three minutes for rebuttal? That's fine. I do want to say it's always a privilege to be here, but it's a special pleasure to be back in person. And I hope it continues after a difficult period. It's good to have you. Nassir applies equally to this case. In Nassir, this en banc court held that the Sentencing Commission exceeded its authority when it used commentary to expand the unambiguous definition of controlled substance offenses in 4B1.2b. In doing so, it carefully considered the guidance of Kaiser, which scaled back the approach to and reach of deference to agency interpretation or explanation of regulations. Can I just ask you maybe, and maybe it's a preliminary question, maybe it comes later. What is the standard of review in your process? It's plenary. And because? I'm sorry? Because? Because number one, we did raise it. It was raised and we can cite, missed, below we cited the Stinson and said even under Stinson that inconsistencies can preclude deference to guidelines. But even if the court finds that we didn't preserve the issue specifically enough, the district court certainly passed upon it. It considered it, it was aware of the Hightower, the potential unviability of Hightower, but it considered itself bound by Hightower. Can you tell me where specifically a Hightower discussion, because I thought the rationale of your objection below was they were interpreting text that doesn't exist anymore and it was orphaned. And that's a different emphasis from a Kaiser claim. It was a different emphasis and Kaiser was not specifically mentioned. But at, and I also am not sure that defense counsel specifically mentioned Hightower. However, it was discussed at length by the court and below we also, we did discuss, I'm trying to find the, at 110, in the appendix at 110, we talked about the, about Stinson, deference under Stinson and how it may not be applicable. And how if it's inconsistent, it shouldn't be applicable. It shouldn't be deferred to. But I think. If you were writing this opinion, how precisely does an argument have to be made in order to be preserved for appeal? What would be your suggestion as a theme to us? It should be enough to alert the court to the issue. The court was certainly alerted to the viability of, or the then binding nature of Hightower by the government if nobody else. But the district court certainly, I refer to Williams, the Supreme Court in Williams that exercised cert jurisdiction when the court sui sponte raised something and in this court Gardner, where it was the government who did not object to the application of judicial estoffel and the court said, the court itself raised it sui sponte, ruled on it, resolved it, and this court said that that was enough. So even, so you're in effect, it's two paths. One, it's raised sufficiently enough so that people are on notice that the issue is before it, even if certain cases aren't raised, or the court sui sponte deals with the issue. Is that correct? Yes, Your Honor. Okay. Nasir? Before we leave this subject, isn't it a different argument to accept the premise that the commentary is controlling, unless inconsistent, versus the sort of separation of powers and, I mean, it's almost the inverse of that, that was adopted with Kaiser and Nasir, that we don't give that deference if the language is clear, if it's unambiguous. I'm sorry, are you still asking about the waiver issue? I'm asking about plain error and if it's really the same argument. Is arguing that Hightower applies, but the language here is inconsistent, is that really raising the argument that was raised in Nasir? The Kaiser argument that you... I think they're connected. I mean, the fact that Hightower still existed, was viable, was binding, I think sort of governed the conversation, governed the discussion. Now, and especially when Nasir, am I pronouncing it wrong? Nasir? Sorry. When Nasir overruled Hightower, it gave its reasonings for that. I mean, that is now the binding law. So if it were in the district court today, that would be the discussion. The court considered itself bound by Hightower and proceeded accordingly. Where's the Hightower discussion, if you remember? I can point to it in, I know I pointed to it in my brief. Can I get the page saved for rebuttal? Thank you. But there's no question that the logic and the conclusion of Nasir applies. In Nasir, of course, the court noted very simply, the analysis was incredibly straightforward. The guideline does not even mention inchoate offenses. That alone, the court said, indicates it doesn't include them. Same thing here. The guideline alone does not mention conspiracy. That alone should be enough to indicate that it wasn't meant to be included. The government's argument that this court in one line said it does include inchoate offenses, the court made clear it was referring to attempt. And that one line cannot change the black and white type of what the guideline says. It includes attempt. It does not include conspiracy. The court then made two points that bolstered the plain text reading. Again, the contrast, it said, it contrasted it with the crime of violence provision, which includes attempted use, not conspiracy. And it referred to the specificity of the controlled substance definition, lists other offenses that qualify. And it cited the principle that I will not attempt to pronounce in Latin. The expression of one thing means that of another. And then this year cited a policy advantage, which is also equally applicable here. It protects the separation of powers. Not refusing to import an offense, an independent offense, into the definitional provision of a guideline. The guideline, which has been approved by Congress, has been submitted and reviewed by Congress. That's the correct procedure for guidelines. Not importing something, an independent offense, from the commentary, which has not gone through that procedure. And yes, as Judge Bibas, you recognize the winds have changed. This represents sort of a turning point. We are not going to, the Supreme Court woke us up from our slumber of reflexive deference. The same thing has to happen here. The government is essentially trying to reduce a definitional provision of one guideline into commentary of another. And then appending other commentary to that provision. The guidelines don't work by alchemy. They don't work by definitional provision and commentary. It also does it by commentary. It attempts to perform that transformation by commentary. And the footnote in Havis refers to that. It's an even more tenuous connection. It's also, I would say, it's something of an attempted transformation. And I think there's a useful moment, there's a certain usefulness maybe in looking at what really happened here, at the reality. Instead of retyping or copying and pasting the entire set, the definitional provisions and the commentary of 4B1.2, the commission took a shortcut that made perfect sense at a time and has been perfectly useful for a time. But now the we, hypothetically, we agreed with you that there was error, but we think we're reviewing for plain error. How can we say that the error here was plain when we're dealing with a different guideline section, when we're dealing with the term crime of violence, not a controlled substance offense, and where there's a circuit split as to interpretation of 4B1.2? Well, first of all, I think you look at error at the time of the appellate law, and that's Henderson. You look at the law at the time of the appeal. It is now plain error. It is now that, where it's the same logic. To not find an error, or to not find a plain error, you would have now two different definitions. That is one of the implications of the government's argument. No, this would be saying error, but not plain, given that this is the first time we're looking at 2K2.1. I think because of the similarity of the analysis and the conclusion, I think there's no way to get around saying that it's plain error. I think it is, I guess, I think it is plain at this point. I'm not sure that's answering your question. Well, let's say it's plain at step two of OLAMO. We still have step four. Why does it seriously affect the You know, Abreu's co-conspirators took the overt act of shooting and killing the victim here. This is not, you know, it's not going to seem like an injustice to, you know, ordinary people observing this case. For some of the same reasons the court pointed out in the Sear. It affects individual liberty interests, and it affects the separation of powers doctrine. Except that, you know, the Supreme Court took a different direction on plain error analysis than the one that we did in the Sear. In Kaiser? In Kaiser. This affects liberty interests. I think it's entirely different. Mr. Abreu's sentence was significantly higher as a result of the application of this enhancement. It matters. He would probably be out now if he were sentenced within the guideline range without that enhancement. There's no question he's due out in February 23, if I'm remembering correctly. He would probably be out now. And I would also, the government also, I'm sorry, this is the reason. The government conceded that if it would, if it, if the court found error, it would be plain because it would affect his guideline range. I'm sorry. I think it was footnote three in the government's brief. It would affect his liberty interests. He would be subject to a different range. And I believe he would likely be subject to a different sentence. And practically he would be out now as a practical matter. Can I, now my time is up. No, go ahead. I think what, one thing, another implication that's important, I think, of the government's argument is that it would resurrect the controlled substance in terms of the controlled substance provision. Attempts would be, would qualify as controlled substances. It would essentially, that same reading would resurrect what this court found inconsistent in Nasir. Am I making sense? Yes. Okay. Thank you. Could you spend a couple minutes talking about the Overt Act issue? And Conteros was a different context for dealing with immigration there. It's a different context, but it makes no, it should make no difference. It has in other cases, but it should make no difference. Conteros did a really careful job of undertaking the categorical approach for conspiracy. There is no drug trafficking exception to the categorical approach. Many of the courts that have found that it doesn't matter that the difference between Overt Act requirements or not in the drug per 846 offenses, they're very concerned that drug trafficking offenses are essentially the bread and butter or a staple of the federal criminal justice system. But that shouldn't matter. That is not for the courts to fix or amend. There's an easy fix. I think it's really important to note that these issues are not decriminalizing offenses. We're talking about sentencing. And there's a process for amending, for rewriting, for drafting, and for submitting to congressional review. But don't we have something different here? I mean, we're not, we can talk about the commission's intent and what we might gather from the face of the guidelines. But when we look at 846, we have Congress telling us that the penalties should be the same for the substantive offense as for conspiracy. And the reading you're urging would seem contrary to that. The guidelines may sometimes not fulfill a statutory goal or purpose, but the commission should fix that properly. The court shouldn't be importing offenses into guideline text. There are ways to amend, and in the commission's eyes or the government's eyes, fix that. But it shouldn't be by making exceptions to the categorical approach. There is no question here that the New Jersey statute at issue does not require an overt offense, an overt act. And this court has ruled that it's going to apply a meaning of conspiracy that does include an overt act Can I go back to something you just mentioned a moment ago? You said the government conceded in note three that Mr. Abreu would be, if he wins, gets a lesser sentence and conceivably he may even be out by now. That sounds like prejudice. Yes. But it doesn't necessarily sound like plain error. It just sounds like It doesn't sound like, I'm sorry, like. It sounds like he would be prejudiced. Does prejudice equal plain error? I think it affects the justice process in that it affects liberty interests. It affects, I think this court has consistently held that a change in the guideline range, well, is prejudice. That sounds like that may go to the fourth prong of the analysis, but not necessarily the second prong, which is, is it plain? I think because it does affect the fairness of the process generally. Just as deterrence, for example, is supposed to serve both specific and general, I think the individual liberty interest is supposed to involve or implicate both general liberty interests and the fairness of the process. You should be sentenced, people, defendants should be sentenced under the correct guideline range. And of course, it also, the prejudice piece, it certainly affects Mr. Abreu's individual interests. All right. Thank you. We'll get you back on the back here. I'm Mark Horn for the United States. I was last here in October of 2019 and a lot has changed since then, but I'm very happy to be here in person and thank you for that opportunity. I almost don't know where to begin, but I'll start with this. On preservation, we do think there's a difference between making the claim or raising the argument, which I cited in our brief, does a pretty good job of explaining why that is. That, too, was a case where the Kaiser argument simply was not raised in the district court. It was then being raised on appeal on that panel. What precisely was the argument that Mr. Abreu made before the district court? And I think, so the And because that residual clause no longer existed, the commentary had nothing to hang its hat on. When we brought to opposing counsel's attention and to the court's attention Hightower, and there's no coincidence here, Judge McNulty, who was presiding over this case, had in another case relied upon Hightower and issued a pretty substantial opinion explaining why he believed that Hightower continued to be good law, law of the circuit and law controlling. He was saying, until somebody tells me differently, I'm just going to follow Hightower. Yes, but there was no argument made. The only argument in response to Hightower was the commentary is not controlling in all instances. And, of course, that's true under Stinson, but there was no argument presented here that under Kaiser, under Kaiser, Stinson itself, the Stinson standard must have been modified. That argument was never presented. Was it the argument about whether, about the ramifications of Johnson necessarily also entail an argument as to whether application note one to 2K1.2? If you mean Johnson v. United States. With the guideline itself? I'm sorry, if you mean Johnson v. United States from 2015? Yeah. Yeah, I think, again, I apologize for not being clear enough. I think that was part and parcel of the argument that without, that this commentary, this particular provision, attempting or conspiring to commit an offense, commit a crime of violence offense, could withstand scrutiny only if it were interpreting the residual clause, the then-extent residual clause, that is the one before August of 2016. But in response to Johnson v. United States, the commission amended 4B1.2 to eliminate the residual clause entirely and also to move certain, actually to add to the list of enumerated offenses in 4B1.282. But I also want to, I don't want, I'm here not just to say the error but to treat this as a pure 4B1.2A case. It is not. Nassir instructs us to look first to the text of the guideline provision in question. And if that text provides an unambiguous definition of the term in question, that pretty much is the end of the inquiry. The text here says crime of violence. There is no other guidelines that pose the same conundrum. 2K1.3, 2L1.2, 2S1.1. Each of them, like this one, uses the term crime of violence in the text of the guideline. And each of them, just like this one, then supplies a definition of that otherwise undefined term in the commentary. And what's more, those use the same approach that 2K2.1 does. Crime of violence means an offense covered by 4B1.2A and Application Note 1 to 4B1.2. 2L1.2, the illegal reentry guideline, instead in the commentary provides a very, very detailed definition of crime of violence. A definition that actually, at least from my understanding, speaks precisely to the definitions contained in 4B1.2 even as a whole. And then 2S1.1, the money laundering guideline, it says it offers the narrowest definition of all. A crime of violence for purposes of that guideline, according to the commentary, is only an offense that satisfies 4B1.2A1. That is an offense that has as an element the use, the attempted use, or threatened use of physical force against another. So, three different approaches in the commentary, three, and those approaches vary in terms of their scope, but all of them are purporting to interpret fairly and explain what an otherwise undefined term in the text of the guideline means. And so under, just taking the seer at its word, taking the seer at its word, we are supposed to start with the text. Crime of violence, if we've learned anything in the last 30 to 40 years of crime of violence jurisprudence, is that that the letter, your supplemental brief, suggests we shouldn't be applying lenity here. It relies on an 11th Circuit case that predates Pew, a 2020 case from the 5th Circuit, and both of them discuss the issues of fair warning and separation of powers, but none of them discuss, you know, the issue of avoiding over-punishment and tilting in favor of leniency. Why shouldn't that be our interpretive approach if there is, as you seem to be suggesting here in ambiguity, seems like that ambiguity ought to be resolved in favor of the defendant? I think at least two answers to that, and if the court would indulge me. First and foremost is that my good friend didn't invoke the rule of lenity at all, either in the opening brief or the reply, and so from our perspective, Mr. Abreu is way the rule of lenity argument. But second, second, the rule of lenity, Stinson itself controls this case. Stinson, yes, is right. Kaiser, in this year, this court held that we, as litigants, and you as Article III judges, have to graft onto the Stinson standard what Kaiser says in terms of... But Kaiser tells us to exhaust the traditional toolkit of statutory interpretation, and lenity is as traditional a part of that which the guidelines after Booker do not do. These guidelines are mandatory. They're binding only in a purely procedural sense. The court has to accurately apply them to calculate the applicable guidelines range, has to accurately apply them when exercising departure authority, but after that... Okay, so let's take this out. You want to analogize this case to Beckles. Beckles says as a matter of vagueness, we don't have to worry about vagueness in the guidelines because they're advisory. So that knocks out the fair notice piece. But then Pew, for purposes of the ex post facto clause, says no, we do have to take seriously, even though the guidelines are not binding, we know they exert a strong gravitational pull over punishment. Why isn't that the better analogy such that there's a risk of over punishing, of jacking up punishments here, therefore we ought to lean towards leniency, regardless of the notice issue? Well, two things again. I think Stinson still controls this test in the sense that you don't get to... Stinson is now modified by Kaiser. Kaiser sends us to the toolkit, and why isn't this the right part of the toolkit? Well, I'll go on to the toolkit then, because the next step in the toolkit is to look at structure or context, and then after that, history and purpose. So let's look at structure and context. Again, 2K2.1 has no definition. The commission says, look at 4B1.2A and application note one, there too. And there's no ambiguity there about what the application note says. But even if you think that this is a 4B1.2A case, which it is not, look at the structure of 4B1.2A. You have the elements clause in A1, and then you have an enumerated offenses provision in A2. The elements clause includes at least one kind of encode offense, forgive my pronunciation, but one kind of encode offense attempts. It plainly does that. So even this case could be distinguishable, even if there's a general rule entity, because 2K2.1 refers over to commentary and arguably incorporates it by reference. Well, I don't think there's any argument about it incorporating it by reference. It flat out says, go to 4B1.2A, all of 4B1.2A and application note one to 4B1.2. So I don't think there's any debate about what the commentary here does. Say we follow you there, but doesn't that just take us right back to Nassar and the exclusion of conspiracy, a bridge that we've already crossed? But this court crossed that bridge in the context of a pure 4B1.2B case, not a 4B1.2A case. And so if I could continue with exhausting the toolkit of statutory construction that I think applies here, the crime of violence definition has the elements clause, then it has an enumerated offenses provision. Four of those enumerated offenses do not require at all affirmative use of physical force against anybody. Those are the offenses of using or possessing a certain kind of firearm or using or And so that to me is sort of collectively 4B1.2A itself is lending support to the notion that it does not unambiguously exclude all encoded offenses other than the one expressly mentioned in the text of the guideline. What do we do with the fact that this was in footnote ten of Walker, that the government has already taken the position that conspiracy is excluded? In the context of 924C, but I have, and also for that matter the Unquote Criminal Act, but I do have an additional point to make about that, and that goes actually into the next part of the toolkit. History and purpose. This court in 1990, now we no longer take this position in the statutory context, but in 1990, this court in an ACCA case, a statutory case, not a guideline case, in Preston, held that a conspiracy to commit a robbery satisfied the ACCA elements clause because the jury instructions for that offense would necessarily subsume all of the commission intend, and was the definition of crime of violence that it adopted in 1989, does it support, you know, is it so unambiguously clear that you can't resort to explanatory commentary? Could I go back? I think your argument about the text of 4B1.2A2 is clever, but first you have to get past 4B1.2A1, which says use, attempted use, or threatened use. So it's treating attempts as just like use, but it's not treating solicitation or conspiracy just like use. You don't think that conspiracy can be shoehorned into threatened use? We're not arguing that conspiracy is... Right, you're not arguing it's an A1 force crime, but it's not... A1 sets out a general principle, and then A2 has some very specifically enumerated offenses, and the fact that you can analogize your crime to use for unlawful possession of a firearm or explosive, A2 is not the provision you're supposed to be analogizing to. A1 is the one that lays out the general principle. But, again, the statutory toolkit says you're supposed to look, among other things, at structure and context, and I'm pointing to an aspect of the definition of crime of violence that does pose problems for my friend. Again, if you view this as a pure 4B1.2A case, which, as I've said to the point probably of exhaustion, this is not a pure 4B1.2A case. This is a 2K2.1 case, and it's very clear, and what it's very clear application means and whether that deserves deference, because the term crime of violence is simply undefined in the text of 2K2.1. But I also want to talk about history, and in this respect, counsel said something that, unfortunately, the Nasir court accepted as true, which is actually not true. We cite two amendments to the guidelines in particular for 4B1.2 in our brief. Amendments 268 and 528. Both of them went through notice and both of them were submitted to Congress for review. Amendment 528 was submitted to Congress with a bundle of other, with a bundle, and in amendment 528, the commission expressly republished this commentary, the commentary that you hear meaning 4B1.2's commentary, to make crystal clear its view that conspiracies and attempts to commit crimes of violence or control substance offenses satisfied the definition in 4B1.2. Okay, so, and why that matters is because Congress allowed that amendment to go into effect while simultaneously rejecting through an enactment, and I can provide a citation after argument, two other proposed amendments that actually would have amended portions of commentary of other guidelines. And so the notion that Congress never reviews these, wrong. The notion that the commission doesn't submit these and run through the gauntlet of notice and comment, wrong. This court in Berberina, a case that Nasir unfortunately never even addressed, an opinion authored by Judge Rendell with Judges Smith and Barry constituting the rest of the panel, acknowledged that the commission under its own rules endeavors to submit amendments to the commentary and amendments to policy statements through notice and comment and then congressional review. And in fact, it did for the two most important amendments at issue here, if this is only a 4B1.2 case. It did do that. But Nasir was an embanked case, right? It was an embanked case. And as Justice Frankfurter once said. There's no way we're going to overrule it. Well, one other point. Nasir is on cert, is pending before the Supreme Court on the Reha Youth issue. Defense counsel, in opposition to the government's cert petition, has conceded that in light of Greer, the judgment must be vacated and matter remanded for further proceedings before this court. This is, so this court, assuming that does happen, and it was on a long conference earlier this week, so I imagine we'll see orders, if not Friday, then on Monday. Assuming that happens, this court will be in the same position vis-a-vis Nasir as this court was when McCance was vacated in light of Reha Youth. And the question for this court will be how much of the opinion to reissue. I'm not, you know, that's it. You have. When you look at Nasir, I mean, essentially what it's saying is the guideline itself is what you look to. And not so much the application, though, with respect to the inclusion or expansion of something to include in Kuwait offenses, in that case, attempting. Here it's conspiracy. Why don't we just simply follow the logic? Because the guideline here, I don't think there's any, I'm not sure how one could say, especially after looking at the last 30 to 40 years of crime of violence jurisprudence and violent felony jurisprudence, that the term crime of violence has a crystal clear and plainly obvious meaning. I'll also add that, you know, baked into, you know, this application note also talks about aiding and abetting. And this court has long held that aiding and abetting doesn't even need to be expressly charged in an indictment in order for that to be a viable basis for liability for a substantive count. Pinkerton liability extends. You can be held liable for the substantive acts of your co-conspirator so long as those acts were reasonably foreseeable to you under Pinkerton. Now, look, we made these arguments in Nasir. I get that. And apparently we didn't make them well enough because they didn't persuade the court even to the point of acknowledging them. I understand that, too. But to me, the key distinction, again, if this is a pure 4B1.2 case, is according to this court's unanimous opinion in Nasir, that part of Nasir, the term, the definition of controlled substance offense in the text of 4B1.2b really was plain and unambiguous. It did not mention any kind of in code offense. Now, in reaching that conclusion, the court never grappled with expressly prohibit. And there are now actually pending five different cert petitions challenging rulings from other circuits that essentially don't follow Nasir on this point. The Solicitor General in one of those cases that's already been denied, TAB, filed a brief in opposition that made the obvious point that, and especially for those of us who had the privilege of doing even more work or dealing with Supreme Court practice than I've ever had, made the obvious point that under Braxton, the commission exists to iron out circuit splits. So really, you know, as a practical matter, this isn't a good case to spend, consume the court's precious resources on. But it also spent about 15 pages explaining in some detail why it respectfully believed that the position this court unanimously reached in Nasir was wrong, why it didn't actually properly interpret the text of the statute and why it didn't fairly characterize the history of these enactments. And again, and the part about Nasir on a personal level that is just as simply as a litigant, that is puzzling to me, is its categorical statement that amendment never goes through notice and comment or congressional review. That is false. It is just flat out false. It does. And to the extent that Nasir was relying upon separation of powers principles, of course the guidelines are advisory. Mestreda held that even mandatory guidelines, that the Sentencing Commission itself and the mandatory guidelines framework didn't violate the separation of powers. Berberina said, you know, the separation of powers concerns have even less force now that the guidelines are advisory after Beckles. But on top of that, even if it's only voluntary that the commission just does this out of the kindness of its heart, so to speak, and I don't mean to be sarcastic, but their own rules say we're supposed to do this. And invariably they do. Not always. There are occasions when they don't. But again, Amendment 268 and 528, they did. Amendment 268 was so controversial that I won't say my good friend because neither she or I were practicing, I think, at that point, but the federal defender community offered testimony at the open hearing on 268 when it was still just in a notice, an announced proposed amendment, and said, don't adopt it because it will dramatically expand the scope of the career offender guideline. What did the commission do? Thank you very much. We're submitting it to Congress without a word change. It was submitted to Congress. And Amendment 262, I'm sorry that I'm beating a dead horse, that wasn't a minor amendment. It took text that had formerly been in the commentary and moved it into the guideline. It jettisoned what had been the existing definition of controlled substance offense, which pretty much tracked what was in 994H, and replaced it with a definition that is substantially what appears today. It also jettisoned the textual definition of crime of violence. That had been pretty much Section 16 of Title 18. It jettisoned that and replaced it with effectively the language drawn from the ACCA's violent felony clause, or actually definition. Put that in the text. It then took a piece of commentary, the provision about aiding, abetting, attempting or conspiring, that had formerly, before 1989, applied only to controlled substance offenses, and applied it, moved it to Application Note 1, where it lives today still, and said it applies both to crimes of violence and controlled substance offenses. Those are really substantial changes. They weren't just to the commentary, they were also to the text. And they were all submitted to Congress in the very same document. So I don't think it's really fair to Congress to say that Congress didn't review it. Congress has an obligation to review amendments to the guidelines, to the guidelines text themselves, and even if Congress doesn't have a statutory obligation, doesn't have a statutory obligation, to review proposed amendments to commentary. Why wasn't the text itself changed? Pardon me? Why wasn't the text itself changed to include in Co-8 defenses, or in Co-8 crimes? So in Amendment 268, I don't think the Commission thought that it needed to do that in order to satisfy the separation of powers. It sounds like what you're talking about is the equivalent of legislative history. But Kaiser says that we are supposed to look at the history and purpose of the interpretive administrative action in question, and for that matter, the regulation that's being interpreted. Kaiser is all about what deference you give to an agency's interpretation of its own legislative rules. Well, the Commission, and look, the analogy to what had been our and Seminole Rock deference, what's now Kaiser deference, has always been a little bit forced because the Sentencing Commission is a pretty unique kind of agency. It resides in Article III. It's an Article III agency, and this Court had held in Berberina that even if amendments to policy statements didn't go through notice in common, it still wouldn't violate the separation of powers because Congress could step in and overrule them. And so I mentioned this. Kaiser tells us that when – and the whole thing was that when an administrative agency promulgates a clear rule, in this case that inchoate crimes are included, any subsequent interpretations that expand the scope receive no deference. Understand. I understand that, Your Honor. But again, putting aside 2K2.1, where it just uses the term crime of violence, which I submit does not have a clear meaning, right, and looking at this as only a 4B1.2A case, Preston in 1990 held that a conspiracy to commit a crime of violence, in that case robbery, satisfied the elements clause. We don't say that that is the correct way to approach the elements clause of the ACCA or 924C today. We don't say that. But this Court held that in 1990, just one year after Amendment 268 went into effect. And so the Commission could certainly rely on Preston as reinforcing its view that a conspiracy to commit a crime of violence really was a crime of violence and not just as an interpretation of the residual clause because Preston acknowledged there was a residual clause argument in that case but refused to reach it. It grounded its holding on the elements clause of the ACCA. Do my colleagues have any questions on the final issue, which deals with whether you need an overt act? You have nothing. On that score, I would urge the Court to adopt the approach of the other five circuits now that have gone the government's way on the guidelines not requiring proof of an overt act when it uses the term conspiracy. I would ask that this Court affirm the judgment below substantially for reasons expressed in our brief and in our 28-J letter. And once again, I thank you on behalf of everybody in this courtroom for the honor of being here today. Thank you. Ms. Arquette. If I could first address or respond to Judge Bibas's question, the first go-around. The discussion of how the district court addressed Hightower is in pages 2 and 3 of my reply brief. And it refers, the appendix pages are 126 and 7 and 130. If I could just respond to a couple of points made by the government in its presentation. The government has not, did not address genuinely ambiguous in its brief. It lays out, it cites some factors here, but it's making, I think, what is a very simple and straightforward issue far more complicated. One issue is in terms of submitting to Congress. Congress has a particular job. It is not Congress's obligation or function to review and approve or disapprove of commentary. The structure of the guidelines and the process is clear. Guidelines are reviewed and approved or not by Congress. Commentary is the agency's interpretation of that. Also, I think it's important that looking at, even if you assume that because all the commission did was refer to 4B1.2 in the commentary, it doesn't make the commentary disappear. I think in determining whether it's genuinely ambiguous, you can look to the commentary and say, it refers to 4B1.2. And what the government has not done is indicate, is point to any indication whatsoever that Congress intended to refer to 4B1.2. It has indicated two different definitions, one for 2K2.1 and one for 4B1.2. The obvious thing that the commission was doing was simply copying and pasting, without copying and pasting, the structure and content of 4B1.2 and the commentary. There's no indication that it intended to meld them into making the definitional provision commentary and appending more commentary to that. Before you sit down, I think you were going to respond to Judge Bibas's question about where in the appendix is the reference to high towers. No, he did. She did. I apologize. I was talking. My fault. And I think unless your honors have any other questions, thank you very much. Thank you very much to both counsel for excellently presented arguments.